**KANSAS CITY, Missouri, Respondent,**

v.

**Thomas Kent WALLER, Appellant.**

**No. KCD 26864.**

Missouri Court of Appeals,
Kansas City District.

Dec. 2, 1974.

Motion for Rehearing and/or Transfer
Denied Dec. 30, 1974.

Application to Transfer Denied
Feb. 10, 1975.

William E. Shull, Duncan & Russell, Gladstone, for appellant.

Aaron A. Wilson, Jr., City Counselor, Rex G. Bostwick, Asst. City Counselor, Kansas City, for respondent.

Before PRITCHARD, P. J., and SWOFFORD, SOMERVILLE and TURNAGE, JJ.

SWOFFORD, Judge.

The appellant was convicted of violating municipal ordinances of Kansas City, Missouri pertaining to liquor and jukebox licenses and appealed to the Circuit Court of Jackson County, Missouri, where he was discharged on the jukebox license charge, but again convicted in a court-tried case on the liquor license charge and fined $120.00, from which judgment he appealed to this court.

The first point he relies upon to secure a reversal of this conviction is that the information filed by the City is fatally defective and does not charge an offense, in that it is vague and indefinite, charges numerous acts and offenses in the alternative, and does not fully and fairly inform the defendant of the charge against him. His second point relied upon is that the court erred in failing to grant his motions for acquittal and finding him guilty, in that the proof failed to establish that defendant's activities brought him within the prohibition of the ordinance under which he was charged.

A brief summary of the facts, as disclosed by the transcript, will suffice for the determination of this appeal.

On January 20, 1973, one Alex Thomas, an investigator for the City Liquor and Amusement Control Department of Kansas City, Missouri, went to a building at 5108 Prospect in that city to investigate a complaint of the operation of a disorderly house and the sale of liquor without a license. He was admitted to the premises by the defendant, seated himself at the bar and ordered a Scotch and water for which he was charged and paid eighty-five cents. He stated that he saw people dancing to jukebox music, putting money in the jukebox, people drinking what he thought to be alcoholic beverages, and the barmaid taking money for the drinks. He also testi-

fied that the appellant stated that he was in charge of the place and that he, Waller, was walking around the premises being friendly with the patrons and being quite social.

Thomas further testified that the records of the city's Department of Liquor and Amusement Control showed that no liquor license had been issued to the appellant or to the location at 5108 Prospect.

Part of the drink purchased by Thomas was retained and the assistant city counselor representing the city told the court below, prior to the commencement of the hearing, that a stipulation between counsel had been reached that such liquid was an alcoholic beverage. Counsel orally moved to suppress this evidence and objected to its introduction, but such motion was denied and objections overruled, and no point is raised here in connection with these rulings. Thomas read, without objection, from a report of the Criminalistic Laboratory of the city to the effect that the liquid in question, upon testing, was revealed to contain 12.5 percent ethyl alcohol by volume and 9.5 percent by weight.

About 20 minutes after his arrival at the premises, Thomas was joined by other investigators and by police officers and the arrest was made.

One of these investigators testified that he talked to appellant and that appellant stated that he was in charge of the "club" and was president thereof. He stated that he and another officer placed quarters in the jukebox which were not returned. He also testified that appellant had applied for a jukebox permit in 1971 as owner and manager of the "Night Social Club" but that no liquor license had been issued on the premises as revealed by a search of the city records.

The defendant, Waller, offered no evidence. The court thereupon dismissed the charge of operating an unlicensed jukebox and convicted Waller on the liquor license charge, as above noted.

The information filed by the city upon which appellant's conviction is based charges that on January 20, 1973, at 5108 Prospect, Kansas City, Missouri, the defendant:

"Did unlawfully within the aforesaid city, county and state commit the following offense:

*Did allow alcoholic beverages to be consumed on premises under his control, where food, beverages or entertainment were provided for compensation in the form of dues, fees or special assessments without first obtaining a 'COL' license as required by Sec. 4.18 of this chapter,*

in violation of the Revised Ordinances of Kansas City, Missouri, 1966, as amended, Chapter 4, Section 11, Penalty Chapter 1, Section 117."

Chapter 4, Article IV, Section 4.18 of the Code of General Ordinances, provides in part as follows:

" 'C.O.L.' consumption of alcoholic beverage license.

A 'C.O.L.' license shall allow the consumption of alcoholic beverages during the hours alcoholic beverages can be sold by full sales-by-drink licensees:

(a) For every 'C.O.L.' license for clubs, organizations or associations which are private and non-profit, where either food, beverages or entertainment are provided for compensation in the form of dues, fees, or special assessments, the licensee shall pay the city treasurer the sum of sixty dollars ($60.-00) per year.
* * *"

Chapter 4, Article III, Section 4.11, Code of General Ordinances, provides in pertinent part as follows:

"License required.

It shall be *unlawful* for any person to * * * sell * * * alcoholic bever-ages, or *allow the consumption of such beverages* in or upon any premises where food, beverages, or entertainment are *sold or provided for compensation,* within the limits of the city without first obtaining a license therefor * * *"
(Emphasis supplied)

The term "C.O.L." is defined in Chapter 4, Article I, Section 4.1, Code of General Ordinances, as follows:

"Definitions.

*   *   *   *   *   *

(f) *'C.O.L.' licenses:* A license for the consumption of alcoholic beverages in or upon premises which do not possess a license for the sale of alcoholic beverages and where food, beverages or entertainment are sold or provided for compensation as provided in Section 311.480, Missouri Revised Statutes."

Section 311.480, RSMo 1969, V.A.M.S., referred to in the above ordinance, covers the state standards and regulations with regard to consumption of liquor in premises where food, beverages or entertainment are provided for compensation which is not licensed for the sale of liquor.

In appellant's assault upon the information in this case, he improperly seeks to apply rules and authorities applicable to the sufficiency of criminal informations and indictments. This approach is neither proper nor appropriate.

■ Proceedings involving violations of city ordinances are in the nature of civil actions and the same strictness in stating the offense is not required as in criminal proceedings. An information or complaint is ordinarily held sufficient if it describes the act complained of in the language of the ordinance. Kansas City v. Caresio, 447 S.W.2d 535, 536 [1] (Mo. banc 1969); Kansas City v. Stricklin, 428 S.W.2d 721, 725–726 [11, 12] (Mo. banc 1968); City of St. Louis v. Goldman, 467 S.W.2d 99, 104 [5, 7] (Mo.App.1971); City of Kansas City v. Narron, 493 S.W.2d 394, 398 [2–4] (Mo.App.1973).

■ Likewise, such an information or complaint is sufficient if it gives notice of the offense and is sufficiently definite to be pleaded in bar of any subsequent prosecution for the ordinance violation. University City v. Redwine, 376 S.W.2d 609, 613 [9] (Mo.App.1964).

■ The information in this case adequately meets these standards. The offense charged was that on January 20, 1973, at 5108 Prospect, Kansas City, Missouri, the appellant violated Section 4.11, which makes it unlawful to "allow consumption" of alcoholic beverages upon premises where "food, beverages or entertainment are sold or provided for compensation" without first obtaining a license. It also charges that the appellant permitted such consumption at the time and place set forth without obtaining a "C.O.L." license as required by Section 4.18, which requires such a license where "food, beverages or entertainment" are provided "for compensation in the form of dues, fees or special assessments". A comparison of the information herein with Sections 4.11 and 4.18 clearly demonstrates that it was couched substantially in the terms of these ordinances. In attacking the sufficiency of this information, the appellant fails to recognize the fact, which seems apparent, that the violation charged was of Section 4.11, and that Section 4.18 simply sets forth the circumstances and business conditions covering the classification and permissive limits of "C.O.L." licensees and the annual fee for such a license. Section 4.18 does not declare any act or failure to act, unlawful. A charge of ordinance violation could not be leveled under Section 4.18, without more.

■ This distinction also answers the complaint of appellant, that he was charged in the disjunctive with numerous offenses, which he calculates as 46 in number. This position arises from the use in Section 4.18 of the terms "either food, beverages or entertainment" and "for compensation in the form of dues, fees or special assessments". As stated, these disjunctive uses in that ordinance relate to activities and classification of this type of operation requiring a "C.O.L." license, not to offenses. It is no offense to provide food, beverages or entertainment for dues, fees or special assessments, or any combination of those activities. The offense is to sell or permit the consumption of alcoholic beverages while so engaged, without an appropriate license, as prohibited by Section 4.11. That is one offense, not 46.

Appellant was adequately advised of the specific charge in substantially the terms of the ordinances and his conviction would be effectively barred from any further prosecution.

■ Even if there was any merit in his position, it would be waived, since he did not file any bill for particulars or any other attack upon the sufficiency of the information before trial. Kansas City v. Stricklin, supra, 428 S.W.2d at 1. c. 726 [14, 15]; City of St. Louis v. Goldman, supra, 467 S.W.2d 99 at 1. c. 104 [7]; City of St. Louis v. Capitol Vending Co., 374 S.W.2d 519, 521 [3] (Mo.App.1964). His first point is ruled against appellant.

Appellant's second point is basically that the city's proof was insufficient to make a case and that he should have been acquitted on motion at the close of all the evidence. He states that this position is sound because *corpus delicti* was not proved and also, there was a failure of proof that any dues, fees or special assessments were required for any food, beverages or entertainment, as comprehended by Section 4.18, supra.

■ When examining the sufficiency of the evidence, the evidence must be construed most strongly in favor of the result reached in the trial court and the facts and inferences therefrom are to be considered

in the light most favorable to the city and all inferences and evidence to the contrary are to be disregarded. Kansas City v. Douglas, 483 S.W.2d 760 (Mo.App.1972); State v. Todd, 477 S.W.2d 725 (Mo.App. 1972); City of Kansas City v. Scanland, 506 S.W.2d 18 (Mo.App.1974). Further, the trial court's judgment will not be disturbed unless clearly erroneous. Rule 73.-01(d), V.A.M.R.; City of Kansas City v. Narron, 493 S.W.2d 394 (Mo.App.1973); Kansas City v. Crawford, 456 S.W.2d 587 (Mo.App.1970).

Under these principles there was ample competent evidence for the trial court to find that the defendant was in charge of the premises; that investigator Thomas was "let in" the premises by the defendant; that defendant stated that he was in charge of the "club" and was its president; that defendant had previously applied for a jukebox license in the name of "Night Social Club"; that Thomas was served an alcoholic drink for eighty-five cents; that other persons there were being served by a waitress or barmaid and were observed giving her money; that music was playing and people were dancing; that the patrons were putting money into the jukebox; and that the defendant had no liquor license as required by the statute. Thus, the *corpus delicti* was established.

The strict and narrow application of the term, "dues, fees or special assessments", a descriptive term in Section 4.-18(a), the classification of "C.O.L." licensees, as asserted by the defendant, must give way to the broader term "provided for compensation" as employed in Section 4.11, the ordinance under which defendant was charged. The latter is clearly applicable to the facts in this case where money was exchanged for drinks, music and dancing.

The trial court's judgment is not clearly erroneous and the judgment is affirmed.

All concur.